Yes, you may come on up. I'll give everybody a moment to get settled. You may begin when you're ready. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Matthew Dietz and I, with Ed Grunewald, represent the aggrieved parents and children in the same case as this Court has just heard. We represent the Janes, Harrys, and Dicks in the hospital and those who are at risk of institutionalization. Currently, there are over 200 children that are still institutionalized in Florida, over 3,000 children that are medically fragile. Unlike the prior case in which this Court was dealing with heady issues of whether or not the United States has jurisdiction to enforce Title II, our case was limited to basic federal rules of civil procedure using mootness and standing and additional factors in Rule 23 to knock out our case after the United States was knocked out. There are four issues in this case. The first one is five years after the case was filed, the District Court erred by converting a summary judgment motion into a third 12B1 motion in order to find our complaint was not broad enough to cover the whole community-based services a medically fragile child would need. Second, the District Court adopted an ascertainability standard in a 23B2 class action, which has never been done by any court in the country for a 23B2 injunctive relief action. Third, the District Court deemed the Nursing Home Reform Act and passed our case moot after it denied class actions saying that our two children that aged out by the time this case reached this stage no longer had standing, even though the same court had held that the same adults had standing by virtue of capable of repetition but evading review. And fourth, the court also erred by deeming individual plaintiffs' AGTH and AR's claims moot, notwithstanding this court's broad holding in the Houston v. Merage Supermarkets case. The initial case is the fact that the court did not apply the clear terms of Rule 8 in even reading this complaint. In this complaint, when the court dismissed it in 2017, the court said that the plaintiff's claims were limited, notwithstanding the systemic relief that we asked for that was previously argued in this case that our claims were limited to solely private duty nursing services. This exact claim finding was belied by two prior holdings, by the two prior rulings on the motion to dismiss. The first one was by Judge Rosenbaum in 2013, finding that the central part of the plaintiff's claims in this case was the convenience of the caretaker standard within the medical necessity framework. That was the holding in her case, and she said in her decision, which is document 175, that the definition of medical necessity permeates every count in the complaint. In addition, if this court even looks at the complaint, all five counts do not even mention private duty nursing services. They mention medically necessary services. There's only one demand within the 13 categories of relief by the end that even mentions it. Then after this, the defendants again brought the same motion to dismiss, saying, you know what, we changed the rule solely for PDN services. It's moot now. At that time, Judge Hunt stated, no, they did not address the fact that this does not change the regulation. The definition permeates the complaint. I mean, the relief sought by the plaintiffs. Not only until the United States Department of Justice was deemed ineligible to participate and did not have standing, did this court change and say, plaintiffs are stretching it by saying that we did not allege the complaint sufficiently. Had Judge Rosenbaum said in 2013 when reviewing the complaint, no, you're not alleging it sufficiently, of course we would have had the opportunity to amend. That did not happen. Now, then we step into the mootness argument. Is it moot? And the issue that we have with regards to mootness, and we could look at Troiano or we can look at the Sheely case. The first thing, first, the court considers whether the termination of the offending contact was unambiguous. Judge Rosenbaum gave a great analysis of this in her first order on DE-175. In DE-175 she referred to the Beta Upsilon Chi case, which is a 2009 case. And she basically said this is not Beta Upsilon Chi. And that's the same analysis that this court could do, which Judge Rosenbaum did. This is not Beta Upsilon Chi because that dealt with one issue. And this does not, because the definition of medically necessary permeates the entire case. Why is that important for the first issue on mootness, whether the termination of the offending contact was unambiguous? By taking one ice cube out of an iceberg, it does not make the iceberg go away. What we were attacking here was not the ice cube, it was the iceberg. You cannot surgically cure an offending practice. It is the hallmark of not being unambiguous. When you say unambiguous, it's not going to return. For example, when I stood in this courtroom in this spot in the Troiano case, the court asked me, the Troiano case involved a supervisor of election who decided to use accessible voting machines. And then she said after the case was settled, I'm going to use them. It cured it. There was nothing that they can do. In this case, these children have a whole panoply of different medically necessary services for community-based living, from therapies to transportation to respiratory therapies to home health aids, which are all still subject to the convenience of the caretaker standard. This was all included within the complaint. This was all dispensed with at the 11th hour before trial. Now, the other important issue in this matter is the class action. This is a B2 class action. There has been no cases involving a B2 class action where ascertainability has been a factor, especially in an Olmstead case. As Judge Jordan said, in his similar case that he had against the Secretary of the Agency for Healthcare Administration in Florida Pediatric Society versus the Secretary, 23B2 was designed specifically for civil rights cases seeking broad declaratory or injunctive relief for numerous and often unassertainable or amorphous class of persons. Plaintiffs are seeking injunctive relief to compel ACCA and DOH to comply with the Medicaid Act. This is a prototypical case for 23B2 class actions. These civil rights cases that focus on policies and procedures, we're not seeking money, nor can we everybody's claims would be different. We would never meet the issue of typicality in a case like this, because some people are institutionalized. Some people have risk of institutionalization. Some people are institutionalized for a certain amount of time. There's no way that we could obtain a class. However, the device, the purpose of a 23B2 class action is to solve these issues of law. The commonality on this is medical necessity, whether or not a parent has to rely, a parent has to do medically necessary services to keep their medically fragile and medically complex child alive. That was the reason why we brought the case. That was the reason why people were institutionalized. This is a broad systemic case, one of the purposes why the Title II was enacted, to ensure that these policies do not continue. Now, the other issue we have in this case is the PASAR issue, the Nursing Home Reform Act. This is the gatekeeping function to ensure that people are not institutionalized and children are not institutionalized. The court dismissed the Nursing Home Reform Act action because of the fact that the three people who were involved, one had died and the two aged out. They were no longer 21. The Nursing Home Reform Act doesn't have an age limit on it. So given the fact that the court denied our motion for class certification, it no longer had an age limit on the two people that were involved. It should have still been held, and they still continue to do that. There are a high percentage of people that are not receiving their PASARs to this date. That has not changed, and the federal law has been consistent. Further, if this was certified as a class, this was a unified class because children bounce back and forth into and out of nursing homes depending on the care they need and what happens to them. To the effect that they bounce in and out of nursing homes, that's why it was in the class action. Then, if this was certified as a class, even those people that aged out because we're dealing with children, and this is a six-year-old case, would relate back and those people can be class representatives. The last issue in this case is AR. AR is the exact Houston versus Merage supermarket case. This is a girl who moved out of the state because she wanted health care, wants to move back into the case as family ties express an intention to move back once the rules were changed. It has not been done. The court held it was too speculative. It flies in the face of Merage. The last issue that I'd like to address is there's no difference between this case and the Rule 8 issue and what this court just held in the Haynes versus Houston case, which is a 2018 case. In that case, the court said this case is not moot because some of the relief requested in the complaint remains outstanding and could be granted by the court. The only reason why it was not was the court did not give a fair reading of the complaint like Judge Rosenbaum did, like Judge Rosenbaum made clear in that initial order. Thank you very much for your time today, Your Honor. May it please the court, I will begin with the mootness question and try to provide some context to the district court's conclusion that this case is moot. The complaint runs approximately 45 pages. It contains many very broad general statements. It refers to the state's policies, procedures, rules, regulations, acts, omissions, and it refers to medically necessary services, Medicaid services, community-based services. It uses very, very broad labels and it uses them often. When it speaks of specifics, though, when it speaks in concrete terms, it speaks of several defined policies. The only one that was still at issue in this case at the conclusion was one element of the medical necessity definition, that's the so-called convenience standard, and its application to private duty nursing services, what we call PDN services. Judge Rosenbaum's order did not say that this case was broader. It did not say that medical necessity as a general matter permeates the entire case. What occurred in that order was that she concluded that the state's changes to make the convenience standard inapplicable to PDN services were not yet final, they were not yet formalized, because there was still a general rule in the administrative code that applied to all services, including PDN services. So when the state made its change, it said, okay, now we're not going to apply the convenience standard to PDN services, and PDN services was what was truly problematic because the state had a policy that said that if a parent is able to provide, or some other caregiver is able to provide, PDN services, then we will deem that to be for the convenience of the parent or the caregiver, and we won't authorize PDN services through Medicaid. So essentially it was substituting the parent for a nurse, and that's what was their grievance. That's what they complained about, that's what in their complaint they discussed, as they had denials of PDN services on that ground, they claimed to have been injured by that, and that's what the state changed, and it changed that beginning in January of 2013. It said to its vendor from now on, don't apply the convenience standard to PDN services. It made changes to its handbook later in 2013 and again in 2014, and then finally in November of 2016, it changed the administrative code, the Florida administrative code, to cross-reference the definition of medical necessity and to say that the convenience standard no longer applies to private duty nursing services. When that was adopted after... It still applies to other services. And when that rule change was final, that's when the district court concluded that was the grievance that you alleged in your complaint, now it has been resolved. The undisputed evidence is that since January of 2013, the convenience standard has not been applied to PDN services. The magistrate says there's never been a clearer case of an unambiguous termination of a policy, as in this case, considering the steps the state had taken for a period of three and a half years, and the court dismissed the case. Now, so why does it not apply to other services? Because there's nothing in the complaint to allege any sort of concrete harm or grievance or that they have any sort of stake in the other services or that the state misapplied the convenience standard the way that it did with PDN services to other services. There's no allegation that the state ever required parents to step in and perform therapy services or parents to step in and perform other Medicaid services that these children were receiving. There's no allegation in the complaint that these plaintiffs were unlawfully denied any service under the convenience standard other than PDN services. So that's the complaint. That's the injury that was pleaded. The fact now, or then let me go back to November of 2016. We changed the rule. Then the district court found that we've satisfied the mootness requirement, and the case was, or I'm sorry, the first step after that was that the court dismissed the Department of Justice's claim. Almost from the day that the Department of Justice's claim was dismissed, these plaintiffs began to identify new claims, new grievances that were never raised before, not raised in the complaint, not raised during the course of the litigation. We list, I believe, in footnote seven of our brief, 14 new claims that they propounded once the Department of Justice's case was dismissed. These were claims that had to do with services provided to adults, services other than PDN services, documents that the state had issued that were never at issue in this case before. Then we went back and we looked at the complaint, and we saw none of these had been alleged in this case. Their argument for saying that these claims had been alleged is, well, just look in the complaint. We say medically necessary services, or we say we are challenging the state's policies, procedures, rules, regulations, customs, acts, and omissions. Well, if that's sufficient to plead a claim, then they've pled virtually every claim that could be conceived of. And we have no notice of what new claims they might invent or posit at any point during this litigation. A plaintiff cannot simply say, particularly after Twomby and after Iqbal, cannot simply say, here's a label, all services. As they say in their brief, they are challenging a constellation of policies and a cluster of services. Let me ask maybe a practical question, not wholly legal, but we've gone over all the legal grounds, which is this litigation by these individuals, we have this conjuries of ways that things can come and go. That is, on the mootness, there's clearly something to the fact that people can age out, people can die when you have individuals. You say they're throwing up things at the last minute. Isn't that some argument that this type of litigation can better be handled by a Department of Justice suit that can bring it all into one ball of wax that isn't going to go away, but can also then be brought together? So the two cases seem to be a little connected. I recognize your answer may be no authority, no authority, but let's pass that for the moment. Is there a practical thing that it's better to handle it through DOJ? Well, I think that would be a choice that Congress would have to make. Even if I'm right about that, Congress just still didn't do it. Congress still didn't do it. But I do think that they had every opportunity to raise the claims that they wanted to raise. The trial court extended the discovery deadline seven times. This case was filed in 2012. They amended their complaint twice. They could have amended it again if they really had grievances. And this is the limitation that standing imposes. So it might be nice to have someone who can come into court and say, I'm going to challenge all of these different policies, and let's get it all straightened out. But that's not typically how litigation works in light of Article III's case and controversy requirements. So if these plaintiffs had a grievance, they could have brought it very easily over a six-year litigation. Even now, we don't know what exactly they're challenging. So they say that they don't want the convenience standard applied to other services. Have they sought other services? Do they need other services? Have they even denied other services? Is there any risk that they would be denied other services? Is there any indication that the state has applied the convenience standard to other services? Is there any risk that a denial of those other services would cause them to be institutionalized? Will they really be institutionalized if they're denied, say, occupational therapy or speech pathology? There are no facts in the record, and there's not even a fact in their complaint to that effect. So going back now and expanding this case beyond the well-pleaded allegations of the complaint, we think that the district court properly said no to that. And the district court observed this litigation for six years. It knew what was at issue in this case. It knew what was really in dispute between the parties, and it read the complaint properly, not reading too much into labels and the very broad generalities that are in the complaint. Moving to the class certification issue, of course, if the court finds that this case is moot, it need not address the class certification issue. Let me stop you there for one second. On the NHRA issue, I heard your adversary say, well, there's no age limit on that, so they shouldn't have declared it moot because AG and TH aged out. Is that accurate? And I had thought they had some claim based on the at-risk children, but I didn't hear him raise that. Am I wrong about that? First, to the NHRA claim, there are a couple of answers to that. First, that claim was dismissed not because of the aging out, but that claim was dismissed because the complaint brings that claim only on behalf of the institutionalized children, and there are no institutionalized children remaining in the case. So the allegations in the complaint are there. AG and TH were not institutionalized? They no longer are. They were at one time, so up until 2013. No longer are, irrespective of the age issue? Irrespective of the age issue. Okay, go ahead. Then you had another string to it. Yes. That was why I was saying that maybe I just didn't hear him or he didn't take his time on it, that they were saying that the quote at-risk children should count as institutionalized because they might be institutionalized. I think what they're saying specifically with respect to the PASAR is that a child who is living in the community and who is not institutionalized could plead a claim challenging the state's PASAR process. The problem here is that they didn't. The complaint alleges that only the institutionalized children bring that claim. They said that directly in their motion, I believe their initial motion for class certification. So the district court simply read their complaint the way that they alleged it. The other thing with respect to PASAR is that Florida has essentially two PASAR processes, one for children and one for adults. The PASAR process for adults is handled through a different department. It's handled through the Department of Elder Affairs. That's the entity that administers that process, and they're not a party to this case. So even if they had alleged the PASAR claim on behalf of all of the plaintiffs, they would not have alleged a claim as to the way that the state administers that PASAR program with respect to adults because that's in an entirely different department that's not a party to this case. So I think those are the different answers to the NHRA PASAR claim. With respect to ascertainability, they say that no court has ever applied ascertainability to a B-2 class for equitable relief. That's exactly what the former Fifth Circuit did in the Debromacher case, which we cite in our brief. That was a case in which the plaintiffs sought certification of a class of residents active in the peace movement, and the court said that that was not an ascertainable class and affirmed the denial of class certification in that case. So I think even in the B-2 context, it's important to have some ascertainability, as the Fifth Circuit recognized, because eventually there's going to be, if the plaintiffs are successful, an injunction that the state has to implement, and the state needs to know who is in this class that is entitled to the benefit of this injunction, who can enforce this injunction, and if it's a class such as active in the peace movement or a class such as at risk of institutionalization or at risk of unnecessary institutionalization, those classes would not allow this to be a workable injunction. With respect to the aging out, I think that they mentioned capable of repetition. That issue was not briefed in this case, but they also argue that they continue to receive Medicaid services. Of course they continue to receive Medicaid services, but their complaint is very clear that they're challenging policies that only apply to children, and in fact their complaint says in explicit terms that these policies that they're challenging do not apply to similarly situated adults. So I think that's clear enough. With respect to A.R. who moved to Colorado, her mother in her deposition expressed an interest in returning to the state of Florida, said that they would like to return to the state of Florida, but there was no concrete plan, completely different from the Houston case on which the plaintiffs rely. In the Houston case, the individual was challenging architectural barriers at a supermarket. The plaintiff drove past that, submitted an affidavit saying that he drives past that supermarket regularly, has done so in the past, will do so in the future, would like to shop at that supermarket, and this court said that that was a clear enough concrete plan and that it was likely that the injury would recur. Very different here. I invite the court to review the deposition of A.R.'s mother. She makes statements such as, well, moving back to Florida is an option we would consider. There's no concrete plan as to when that would occur. There's no definiteness as to the circumstances under which it would occur. So this is about people challenging practice when they just want to move in. I mean, lots of people moved to Florida, and some of them could be very concrete. Is there a general case law that says that they could sue? We didn't find that case, Your Honor, but I think that that highlights the fact that this case is moot because if anybody with a general volition to move to Florida can bring an action challenging Florida's policies, we would have a very different litigation landscape in Florida. Now, certainly, if someone had a concrete plan, which is what is required, not simply someday intentions, as Lujan said, but a concrete plan, perhaps. And I think the point is well taken if this is the point, that AR's situation is analogous to that of any person who is residing outside of Florida. And the question ultimately should be is there really a concrete plan to move or is this just a person who would like to challenge Florida's policies on the basis of something that might or might not happen in the future. Unless the court has further questions, we ask the court to affirm. Thank you. Mr. Dietz. Thank you, Your Honor. I would like to highlight some of the inaccuracies primarily. In the court's order in 287, which is the second motion to dismiss this court, the court accurately summarized what Judge Rosenbaum said on page 5. Second, this court determined that notwithstanding any changes that may become finalized, defendants has not cured at least one important provision that was relevant to the plaintiff's case. Specifically, this court held that state has not changed the regulatory definition of medical necessity or medical necessity as prescribed in Rule 59G10100 of the Florida Code, which plaintiffs has argued as a basis for their claims. This is the same thing Judge Rosenbaum said first. This gives lawyers no guidance whatsoever to come six years down the road and say you didn't accurately allege it. The issue of medically necessary services and community-based services is clear and defined. It's clear and defined in the defendant's own documents. It's clear and defined in cases like Olmstead itself that define community-based services. For them to say we don't know what medically-based services are is specious. In addition, Your Honors, the issue that this case was mooted out for the two adults because of the fact that they were no longer institutionalized is also incorrect. That is also in Document 287, and the court goes in length, and that's where the court says capable of repetition but evading review. The court does not say that they were no longer eligible for this case as folks that were not institutionalized, and the issue of what regulations applies was not briefed and is not on the record with regards to the difference between adults and children, and I can't address it. This is a brand-new issue today. How would you address the Debremerker case, the Fifth Circuit 1970 case on ascertainability and class action certification? The issues in this case involves 3,000 well-defined children who receive Medicaid services who the state knows well and pays them for their services, that pays their providers for the services that they get. The fact is to say that it is not the issue with ascertainability is how do we know who's at risk or who's not? The issue, though, we're dealing with is the issue of the change of one regulation that will only apply to medically fragile or medically complex children that have medically necessity. So we're dealing with a universe here of 3,500 children at most. It's not any person who is against the war. So it is a dramatically different situation than that. In fact, every single Olmstead case that has been litigated under Title II is similar in the fact that it talks about medically necessary and it talks about one discrete service that we're attacking. The issue is this was narrowed, and that was a surprise, and it was unfair. Thank you very much, Your Honors, and thank you for your consideration.